UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| VINCENT E. JOHNSON, )<br>)<br>Plaintiff, )<br>)<br>-vs- )<br>)<br>)<br>)<br>PATRICK R. DONOHOE, USPS; )<br>)<br>Defendant. )<br>_____ ) | Civil Action No.: 4:12-cv-0390-RBH-TER<br><br><br><br><br>**REPORT AND RECOMMENDATION** |

**I.     INTRODUCTION**

In this action, Plaintiff, who is proceeding pro se, asserts causes of action arising out of his employment with the United States Postal Service (USPS).  Presently before the court are Plaintiff's Motion for Summary Judgment (Document # 96) and Defendant's renewed Motion for Summary Judgment (Document # 109).  Because Plaintiff is proceeding pro se, he was advised pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th. Cir. 1975), that a failure to respond to Defendant's Motion could result in a recommendation that the Motion be granted.  Plaintiff timely filed a Response.  All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), DSC.  Because these motions are dispositive, this Report and Recommendation is entered for review by the district judge.

**II.     FACTS**

Plaintiff first worked for the Postal Service in New Jersey and, while he was in New Jersey, he was disciplined for excessive absences. It was in New Jersey that he first learned of the USPS policy of progressive discipline.  Pl. Dep. pp. 19, 61-62.  He was reminded about the progressive discipline policy when he got his first Letter of Warning in South Carolina.  Pl. Dep.  pp. 64-65.  He

explained his understanding of "progressive discipline" during his deposition: "Basically the way [progressive discipline] works is that you get disciplined for something, and then if you continue doing whatever, you'll get more discipline," and the discipline gets progressively more serious. Pl. Dep. pp. 62-63. Plaintiff recalled two employees from his days in New Jersey who were removed for excessive absences. Pl. Dep. p. 63.

Plaintiff left the Postal Service and moved to South Carolina in 2003. He was re- hired as a PTF Mail Processing Clerk at the Florence Processing and Distribution Center in July 2007. Letter of Employment (Ex. 5 to Def. Motion). Plaintiff alleges that while he was still a probationary employee, in August 2007, Supervisor Sandra Williams (African-American female) asked him to have sex with her and he refused. He asserts that this happened again a couple of weeks later. He alleges that she approached him a third time in September 2007, and since his probationary period was over by then, he told her "it was never going to happen. . . and she walked away upset, saying: You're fired, You're fired." Decision of U.S. Equal Employment Opportunity Commission; Pl. Dep. pp. 36-37, 76.[1] Plaintiff chose not to report these events to anyone. Pl. Dep. p. 38.

The day after the last alleged sexual invitation, Ms. Williams saw Plaintiff sitting in the manual letters section, with his feet up on the bar. Ms. Williams said to him, "sit right or I am going to fire you." Pl. Dep. pp. 76-77.

On April 14, 2008, Plaintiff received a Letter of Warning for unsatisfactory attendance. The letter stated that he had failed to meet the attendance requirements of his position by having unscheduled absences from his official duties on the following dates: a) 16 hours of unscheduled

---

[1] Plaintiff represents in his Response that Williams propositioned him three times, but the sexual harassment continued until his termination because Williams would stare at him and make him feel uncomfortable. Pl. Second Response to Def. Motion (Document # 121) pp. 3-4, 6.

annual leave from February 16 -17, 2008; b) .12 hours annual leave (a tardy) on February 22, 2008; c) 8 hours of unscheduled annual leave on March 14, 2008; d) 16 hours of unscheduled sick leave from March 15 – 16, 2008; and e) 24 hours of unscheduled sick leave from April 2 – 4, 2008. Letter of Warning dated April 14, 2008 (Ex. 6 to Def. Motion). The Letter of Warning advised that "future deficiencies, such as outlined above, could result in more severe disciplinary action being taken against you, including suspension or removal from the Postal Service." Id.

On July 24, 2008, Plaintiff received a 7-Day Suspension for unsatisfactory attendance. The Notice of Suspension outlined Mr. Johnson's unsatisfactory attendance as follows: a) 8 hours of unscheduled sick leave on May 1, 2008; b) 16 hours of unscheduled sick leave from May 10 – 11, 2008; c) 8 hours of unscheduled annual leave on May 17, 2008; d) 8 hours of unscheduled sick leave on May 18, 2008; e) 8 hours of unscheduled annual leave on May 31, 2008; f) 48 hours of unscheduled sick leave from June 1 – June 8, 2008; g) 16 hours of unscheduled sick leave from June 18 – 19, 2008; h) 24 hours of unscheduled sick leave from July 5 – 9, 2008; i) 8 hours of Absent Without Leave (AWOL) on July 10, 2008; and j) 24 hours of unscheduled sick leave from July 11 – 13, 2008. Notice of Suspension dated July 24, 2008 (Ex. 7 to Def. Motion). The Notice of Suspension (7-Day) advised Plaintiff that, ". . . future deficiencies, such as outlined above, could result in more severe disciplinary action being taken against you, including suspension or removal from the Postal Service. Id.

On September 4, 2009, Plaintiff received a 14-Day Notice of Suspension for unsatisfactory attendance. That notice detailed his unscheduled absences as follows: a) .81 hours of unscheduled leave without pay on June 16, 2009; b) 8 hours of unscheduled sick leave without pay on August 20, 2009; c) 8 hours of unscheduled sick leave on August 24, 2009; and d) 16 hours (sic) unscheduled

sick leave for his absence from August 26, 2009. Notice of Suspension dated Sept. 4, 2009 (Ex. 8 to Def. Motion). This notice also advised him that continued unscheduled absences would be used as a basis for further discipline up to and including removal. Id. Plaintiff filed a grievance through the APWU labor union which was resolved on October 8, 2009, at Step 2. The parties agreed that the suspension would be reduced to a "paper suspension," that is, there would be no loss of pay but that the discipline would stay in his file for eight months. Step 2 Decision dated October 13, 2009 (Ex. 9 to Def. Motion).

On November 3, 2009, the Supervisor, Distribution Operations issued Plaintiff a notice of proposed removal for unsatisfactory attendance. The notice cited seven unscheduled absences from September 2, 2009, to October 21, 2009: a) 16 hours on September 2-3; b) 16 hours on September 8-9; c) 8 hours on September 11; d) 80 hours on September 17 – 30; e) 40 hours on October 6 – 12; f) 7.68 hours on October 13; and g) 48 hours on October 14 – 21. Notice of Proposed Removal (Ex. 10 to Def. Motion). Plaintiff filed another grievance through the APWU. The management's position was that "Mr. Johnson shows no attempt to improve his attendance." The grievance was not resolved. Grievance Summary Step 1 (Ex. 11 to Def. Motion). Thereafter, Plaintiff responded to the Notice of Proposed Removal, explaining that most of his absences were related to prior, service connected injuries. Response to Notice of Removal (Ex. 12 to Def. Motion). On November 16, 2009, Plant Manager Christensen issued the Letter of Decision–Proposed Removal, upholding the removal. Christensen noted Plaintiff's statements during the investigative interview that he was aware of the requirement that he be regular in attendance and noted that Plaintiff's representative offered no documentation to support possible mitigating factors. Christensen advised that the removal would be effective December 3, 2009. Letter of Decision (Ex. 13 to Def. Motion).

### III.    PROCEDURAL HISTORY

Following his termination from the USPS, Plaintiff filed a "mixed case" complaint with the Merit Systems Protection Board (MSPB), claiming discrimination on the basis of sex and age, reprisal for his National Labor Relations Board activity and activities protected by the Occupational Safety and Health Act, and veteran's status. Decision of U.S. Equal Employment Opportunity Commission (Ex. 1 to Def. Motion). An administrative hearing was held on January 29, 2010; at the conclusion of the testimony the administrative judge issued a Bench Decision sustaining the unsatisfactory attendance charge, finding no discrimination, and upholding the Agency's removal action. Partial Transcript of Administrative Hearing, Jan. 29, 2010 (Ex. 2 to Def. Motion). Plaintiff filed a petition for review to the full Merit Systems Protection Board but his petition was denied. Plaintiff then filed a timely petition with the Equal Employment Opportunity Commission (EEOC), asserting that the MSPB erred in finding no discrimination because his supervisor retaliated against him for refusing her sexual advances and because he was treated differently from Caucasian employees. Decision of U.S. Equal Employment Opportunity Commission. The EEOC issued its Decision on January 12, 2012. The EEOC declined to address Plaintiff's claim of race discrimination as it was not raised before the MSPB. With respect to Plaintiff's claim of sexual harassment, the EEOC concurred with the final decision of the MSPB that Plaintiff failed to establish that his employer terminated him because he refused his supervisor's sexual advances. Id. This civil action was filed on February 10, 2012. In this action, Plaintiff raises claims of quid pro quo sexual harassment and race discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000(e) et seq. and disability discrimination in violation of the Americans with

Disabilities Act (ADA), 42 U.S.C. § 12101, et seq.[2]

## IV.   STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary

---

[2] The Complaint names Patrick R. Donahoe, Postmaster General, as well as several employees of the Postal Service as defendants. The individual employees have since been dismissed, leaving the Postmaster General Donahoe, sued in his official capacity, as the only defendant. Further, although both Plaintiff and Defendant cite to the ADA, the United States is specifically excluded from the ADA's definition of employer, and, thus, a claim under the ADA will not stand against the United States. 42 U.S.C. §§ 12111(2), 12111(5)(B); Cassity v. Geren, 749 F.Supp.2d 380, 384 (2010). Rather, the Rehabilitation Act, 29 U.S.C. §§ 701 et. seq., provides the exclusive judicial remedy for claims based upon a federal employee's disability. Id. (citing McGuinness v. United States Postal Serv., 744 F.2d 1318, 1322–1323 (7th Cir.1984); Boyd v. U.S. Postal Serv., 752 F.2d 410, 413–414 (9th Cir.1985)).

judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324. Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## V.     DISCUSSION

### A.     Plaintiff's Motion for Summary Judgment

Plaintiff filed his Motion for Summary Judgment on August 15, 2013. The deadline for filing dispositive motions was April 17, 2013. Thus, it is recommended that Plaintiff's Motion for Summary Judgment be denied as untimely.[3]

### B.     Defendant's Motion for Summary Judgment

#### 1.     Exhaustion of Administrative Remedies

A federal employee must seek administrative review of his grievance before filing a suit for unlawful discrimination in employment. See 42 U.S.C. § 2000e–16(b) and (c); 29 C.F.R. § 1613.211

---

[3]Although Defendant's present Motion for Summary Judgment was filed after Plaintiff's Motion, Defendant originally filed a timely Motion on April 15, 2013, which was denied and the court allowed Defendant additional time to refile his Motion. Order (Document # 98).

et seq. ; Zografov v. V.A. Medical Center, 779 F.2d 967, 968–69 (4th Cir.1985). The Supreme Court set forth in a recent opinion the steps a federal employee must take to exhaust his administrative remedies for a claim of discrimination:

> The Civil Service Reform Act of 1978 (CSRA), 5 U.S.C. § 1101 et seq., establishes a framework for evaluating personnel actions taken against federal employees. That statutory framework provides graduated procedural protections depending on an action's severity. If (but only if) the action is particularly serious—involving, for example, a removal from employment or a reduction in grade or pay—the affected employee has a right to appeal the agency's decision to the MSPB, an independent adjudicator of federal employment disputes. See §§ 1204, 7512, 7701. Such an appeal may merely allege that the agency had insufficient cause for taking the action under the CSRA; but the appeal may also or instead charge the agency with discrimination prohibited by another federal statute, such as Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., or the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. See 5 U.S.C. § 7702(a)(1). When an employee complains of a personnel action serious enough to appeal to the MSPB and alleges that the action was based on discrimination, she is said (by pertinent regulation) to have brought a "mixed case." See 29 CFR § 1614.302 (2012). The CSRA and regulations of the MSPB and Equal Employment Opportunity Commission (EEOC) set out special procedures to govern such a case—different from those used when the employee either challenges a serious personnel action under the CSRA alone or attacks a less serious action as discriminatory. See 5 U.S.C. §§ 7702, 7703(b)(2) (2006 ed. and Supp. V); 5 CFR pt. 1201, subpt. E (2012); 29 CFR pt. 1614, subpt. C.
>
> A federal employee bringing a mixed case may proceed in a variety of ways. She may first file a discrimination complaint with the agency itself, much as an employee challenging a personnel practice not appealable to the MSPB could do. See 5 CFR § 1201.154(a); 29 CFR § 1614.302(b). If the agency decides against her, the employee may then either take the matter to the MSPB or bypass further administrative review by suing the agency in district court. See 5 CFR § 1201.154(b); 29 CFR § 1614.302(d)(1)(i). Alternatively, the employee may initiate the process by bringing her case directly to the MSPB, forgoing the agency's own system for evaluating discrimination charges. See 5 CFR § 1201.154(a); 29 CFR § 1614.302(b). If the MSPB upholds the personnel action (whether in the first instance or after the agency has done so), the employee again has a choice: She may request additional administrative process, this time with the EEOC, or else she may seek judicial review. See 5 U.S.C. §§ 7702(a)(3), (b); 5 CFR § 1201.161; 29 CFR § 1614.303.

Kloeckner v. Solis, --- U.S. --- , 133 S.Ct. 596, 600-01(2012).

Here, after Plaintiff received the decision from the MSPB, he chose to seek review with the EEOC. Once an employee elects a forum, he must exhaust his remedies in that forum. Devaughn v. U.S. Postal Serv., 293 F.App'x 276, 280 (5th Cir.2008). Of the three claims presently before this court, quid pro quo sexual harassment, race discrimination, and disability discrimination, only the sexual harassment claim was raised before the MSPB. Because Plaintiff did not raise his race discrimination or disability discrimination claims before the MSPB, he could not raise the race discrimination claim for the first time before the EEOC nor can he raise his disability discrimination claim for the first time before this court. Accordingly, Plaintiff has failed to exhaust his administrative remedies with respect to his race[4] and disability claims and summary judgment is appropriate.

### 2.     Quid Pro Quo Sexual Harassment

Title VII makes it "an unlawful employment practice for an employer . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...." 42 U.S.C. § 2000e–2(a)(1). Sexual harassment represents one form of this prohibited sex discrimination. See Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Courts

---

[4] Even if Plaintiff exhausted his administrative remedies on his race discrimination claim by raising it to the EEOC without first raising it to the MSPB, summary judgment is still appropriate because Plaintiff fails to present sufficient evidence to establish that similarly situated employees outside his protected class were treated differently. Coleman v. Maryland Ct. of Appeals, 626 F.3d 187, 190 (4th Cir.2010). In his deposition, Plaintiff names three individuals who were out longer but had fewer occurrences: Dot Ellerbe, Bryant Bennett and Darryl Foster. Pl. Dep. pp. 40-43. However, Plaintiff knows no specific details regarding these individuals' absences nor does he identify their races. Conclusory statements without specific evidentiary support do not support a claim for discrimination. Causey v. Balog, 162 F.3d 795, 801–802 (4th Cir.1998).

recognize two categories of sexual harassment: (1) quid pro quo harassment, where sexual consideration is demanded in exchange for job benefits; and (2) harassment that creates an offensive or hostile work environment. See Katz v. Dole, 709 F.2d 251, 254 (4th Cir.1983); Rachel-Smith v. FTData, Inc., 247 F.Supp.2d 734, 745 (D.Md.2003). Plaintiff raises a quid pro quo claim.

Quid pro quo liability exists where "a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 753, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). The familiar proof scheme developed in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) is applicable in quid pro quo claims. See, e.g., Okoli v. City of Baltimore, 648 F.3d 216 (4th Cir. 2011) (applying the burden-shifting analysis to a quid pro quo claim). To establish a prima facie case of quid pro quo sexual harassment under Title VII, a plaintiff must satisfy five elements: (1) the employee belongs to a protected group; (2) the employee was subject to unwelcome sexual harassment; (3) the harassment complained of was based upon sex; (4) the employee's reaction to the harassment affected tangible aspects of the employee's compensation, terms, conditions, or privileges of employment; that is, the acceptance or rejection of the harassment must be an express or implied condition to the receipt of a job benefit or cause of a tangible job detriment; and (5) the employer either knew or should have known of the harassment and took no effective remedial action. Okoli v. City of Baltimore, 648 F.3d 216, 222 (4th Cir.2011) (citing Brown v. Perry, 184 F.3d 388, 393 (4th Cir.1999)). With respect to the fourth element, a plaintiff must show that he was deprived of a job benefit that he was otherwise qualified to receive. Id. "The fifth element is 'automatically met' when the harassment was alleged to have been perpetrated by a supervisor. Id. (citing Spencer v. General Elec. Co., 894 F.2d 651, 658 n. 10 (4th Cir.1990)).

Defendant argues that Plaintiff's quid pro quo claim fails because he cannot prove that his response to the sexual harassment caused his termination. To satisfy the fourth element of his quid pro quo claim, Plaintiff must present evidence sufficient to show that his reaction to the harassment affected his termination. Brown, 184 F.3d at 393. In other words, Plaintiff must establish, through direct or circumstantial evidence, a nexus or causal connection between his rejection of the unwelcome sexual advances and his termination. See Lewis v. Forest Pharm., Inc., 217 F.Supp.2d 638, 648 (D.Md.2002) (explaining that the plaintiff "must also show a causal connection between her rejection of [the] sexual overtures and the various employment actions she has suffered"). "Courts have long-recognized the difficulty of determining whether the requisite causal connection is present in cases where the acceptance of harassment was purportedly an implied condition, rather than an explicit condition, of receiving a job benefit or avoiding a job detriment." Briggs v. Waters, 484 F.Supp.2d 466, 479 (E.D.Va. 2007). "'[A] plaintiff may rely upon a broad array of evidence' to establish the requisite causal link, and a court can consider circumstantial evidence and draw inferences in favor of the plaintiff in determining whether the causal link has been established." Id. (citing Farrell v. Planters Lifesavers Co., 206 F.3d 271, 283–84 (3d Cir.2000)). The Briggs court recognized that "one way to establish the requisite nexus is to show that 'the unwelcome sexual advances proximately preceded the tangible employment action and the alleged harasser made or substantially influenced the relevant decision.'" Id. at 479-80 (citing Lewis, 217 F.Supp.2d at 648-49).

Defendant argues that Plaintiff fails to show a causal connection between Williams' last sexual advance in September of 2007 and his termination more than two years later in November of 2009. There is no bright line rule for defining when a temporal relationship becomes too remote

to support a causal connection. Briggs v. Waters, 484 F.Supp.2d 466, 480 (E.D.Va. 2007) (citing Gorman–Bakos v. Cornell Co-op Extension of Schenectady County, 252 F.3d 545, 554 (2d Cir.2001)). However, courts have found that a four month lapse between the unwelcome sexual advances and the adverse employment action is insufficient to establish a causal connection. See, e.g., Bolin v. Oklahoma Conference of the United Methodist Church, 397 F.Supp.2d 1293 (N.D.Okla.2005) (holding that female employee was not entitled to inference that termination was causally connected to her refusal to submit to supervisor's alleged sexual advances, where employee was terminated more than four months after alleged quid pro quo sexual harassment); Carter v. New York, 310 F.Supp.2d 468, 478 (N.D.N.Y.2004) (concluding that plaintiff failed to establish causation where four months elapsed between an attempted kiss and the employment action). Here, over two years lapsed between Williams' last sexual advance and Plaintiff's termination.

Plaintiff argues that Williams' comment "you're fired" after Plaintiff refused her sexual advances for the third time creates a causal connection. However, to establish a causal connection, a plaintiff must also show that he was deprived of a job benefit that he was otherwise qualified to receive or, as here, that he received an unwarranted job detriment. Okoli, 648 F.3d at 222. The record reveals that Plaintiff accumulated numerous absences and tardies for which he was progressively disciplined. Postal Service employees are required to have regular attendance. Section 665.4 of the Labor Relations Manual, specifically sets out this requirement: "**Requirement of Regular Attendance**. Employees are required to be regular in attendance. Failure to be regular in attendance may result in disciplinary action, including removal from the Postal Service." Labor Relations Manual excerpt (Ex. 15 to Def. Motion). Plant Manager Paul Christensen explains that unscheduled absence is a serious charge because of its high cost to the agency. An employee's failure

to show up for work can cause the trucks to be late going out, potentially delaying the United States mail. Further, unscheduled absence requires the agency to pay people overtime to replace the no-show employees. Partial Transcript of Administrative Hearing p. 17 (Ex. 2 to De. Motion).

Plaintiff argues that, at the administrative hearing, Christensen, Williams and Washington represented that a "three occurrence rule" required them to discipline Plaintiff as they did, but Plaintiff argues that no such rule exists. Sharon Keels, Manager, Labor Relations, explains that the three occurrences are a function of the Enterprise Resource Management System (ERMS), a computer program which automatically alerts supervisors and managers to employees who may have excessive unscheduled absences. Keels Decl. (Ex. 14 to Def. Motion). The system is programmed to send an e-mail message to management whenever an employee has incurred three unscheduled absences within a ninety (90) day period. Id. Once alerted, the manager may then assess each employee who has been identified by ERMS to determine if the employee has a pattern of such absences and if discipline is appropriate. Id. Plaintiff admits that he was "not perfect in attendance" but argues that others who had worse attendance records than him were not fired. Pl. Response to Def. Motion (Document # 112) p. 2. However, Plaintiff provides no evidentiary support for this argument. Conclusory statements without specific evidentiary support do not support a claim for discrimination. Causey v. Balog, 162 F.3d 795, 801–802 (4th Cir.1998). He also argues that he received prior approval for several of the absences that were charged against him as unscheduled absences. Id. However, the documents he attached in support clearly indicate that, although he requested FMLA leave on several of the dates in question, his requests were denied because he no longer had any FMLA leave available. Request for or Notification of Absence (Ex. to Pl. Second Response to Def. Motion (Document # 121)).

Plaintiff also argues that the April 14, 2008, Letter of Warning and the July 24, 2008, Notice of Suspension were signed by Tom Ridgell, who was not a supervisor and could not issue such disciplinary action. Thus, Plaintiff argues, those disciplinary actions are void. However, the title listed for Ridgell on those documents is "Supervisor, Distribution Operations, Florence Processing & Distribution Facility." Again, Plaintiff presents no evidence to establish otherwise.

In sum, the evidence in the record reveals that Williams asked Plaintiff for sex on three occasions, the last being in September of 2007. At that time, Williams walked off mumbling "you're fired." Beginning in February of 2008, Plaintiff incurred numerous unscheduled absences and tardies and was progressively disciplined (on the first two occasions by someone other than Williams) with a letter of warning, a seven day suspension, a fourteen day paper suspension and finally termination, which occurred in November of 2009. Plaintiff fails to present sufficient evidence to create an issue of fact as to a causal connection between Williams' unwelcome sexual advances and Plaintiff's termination. Accordingly, summary judgment is proper on Plaintiff's quid pro quo sexual harassment claim.

## VI.     CONCLUSION

For the reasons discussed above, it is recommended that Plaintiff's Motion for Summary Judgment (Document # 96) be denied as untimely, Defendant's Motion for Summary Judgment (Document # 109) be granted, and this case be dismissed in its entirety.

 s/Thomas E. Rogers, III  
Thomas E. Rogers, III  
United States Magistrate Judge

November 26, 2013  
Florence, South Carolina

**The parties are directed to the important notice on the following page.**